```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
TELEVISA, S.A. de C.V.,                 :
                                        :
               Plaintiff,               :     05 Civ. 3523 (JSR)
                                        :
               -v-                      :     OPINION AND ORDER
                                        :
KOCH LORBER FILMS, a New York joint     :
venture; LORBER MEDIA, a New York       :
corporation; KOCH ENTERTAINMENT, a      :
New York Limited Liability company;     :
THE MOVING IMAGE, INC., d/b/a/ FILM     :
FORUM, a New York corporation; FILMS    :
SANS FRONTIÉRES, a French               :
corporation; GALESHKA MORAVIOFF;        :
SOCIÉTÉ EDITRICE DU MONDE; and DOES 1   :
through 20,                             :
                                        :
               Defendants.              :
--------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Defendants Films Sans Frontiéres ("FSF"), Galesha Moravioff, and Société Editrice du Monde (more commonly referred to by the name of its well-known newspaper "Le Monde") move to dismiss or stay this case on various grounds, arguing, in essence, that the underlying dispute is better resolved in ongoing litigation in France. For the reasons that follow, the Court stays the case pending resolution of the French litigation.

The basic issue that some court will have to resolve is the ownership of rights in two decades-old Mexican movies, the 1950 picture Los Olvidados and the 1951 picture La Hija del Engaño. See First Amended Complaint ("Complaint") ¶ 1. Both films were directed and co-written in Mexico by the famous "auteur" Luis Buñuel, a man who, like the issues in this case, was never easily claimed by any one country. See id. ¶¶ 16-17. It is a matter of considerable

controversy whether and to what extent Buñuel retained exhibition and distribution rights to these movies or whether, as plaintiff Televisa, S.A. de C.V. ("Televisa") alleges, all such rights were retained by the producer, Ultramar Films ("Ultramar"). Id. ¶ 17.

Buñuel died in 1983, leaving two sons, Juan Luis and Rafael, who hold themselves out to be their father's successors in interest for these purposes. See Summary Order of the Tribunal de Grande Instance de Paris, 3/9/05 ("French Summary Order"), attached (with translation) to Declaration of James B. Swire, Esq., 6/22/05 ("Swire Decl."), as Exhibit B, at 2. Rafael Buñuel is an artist, who resides in California, see Public Records Report, 6/23/05, attached to Declaration of Jay S. Handlin, 7/1/05 ("Handlin Decl.") as Exhibit B; see also Rafael Buñuel biography, available at http://www.pik-art/rafael.htm; while Juan Luis Buñuel's current residence is unknown.

In its rather conclusory complaint, Televisa alleges that it acquired all rights in the films from an unnamed party, as the last in a series of transfers (none of which are particularized) that ultimately traces back to Ultramar. Complaint ¶¶ 12-13. Plaintiff further alleges that at some (unspecified) time it registered copyrights for these pictures in both Mexico and the United States. Id. ¶¶ 14-15.

In 1995, the Buñuels, holding themselves out as part owners (along with Luis Buñuel's co-author) of these same rights, conveyed their interest to FSF and Moravioff. Id. ¶ 18. However, in 1998,

2

the Buñuels obtained what they assert was a cancellation of that agreement, an assertion that FSF disputes.  See French Summary Order at 2.  In short, as of 1998, three different parties -- Televisa, FSF (along with Moravioff) and the Buñuels (along with Buñuel's co-author) -- all believed themselves the owners, in whole or in part, of this intellectual property.

Of the three parties, FSF was seemingly the most active in exploiting these rights.  In 2003, FSF contracted with a French online discount retailer to sell various DVDs, including the movies here at issue.  Complaint ¶ 27.  Similarly, in late 2004, FSF licensed a British company to sell various DVDs, including these films.  Id. ¶ 28.  In November 2004, FSF licensed defendant Koch Lorber Films ("Koch Lorber") to exhibit Los Olvidados in New York and to sell copies throughout the United States.  Id. ¶ 19.  Koch Lorber, in turn, then licensed defendant The Moving Image, Inc. (more commonly known as the New York art film theater "Film Forum") to exhibit Los Olvidados, which Film Forum did from January 28 through February 10, 2005.  Meanwhile, in December 2004, FSF licensed Le Monde to sell DVDs of Los Olvidados as part of a promotion in which subscribers to Le Monde also could receive various DVDs.  Id. ¶ 23.

The Le Monde promotion was scheduled to start in mid-March, 2005.  Id. ¶¶ 23-24.  In late January 2005, however, Televisa and the Buñuels separately informed Le Monde of their respective claims of ownership.  See Summons to Appear Before the Paris Tribunal, 4/5/05 ("Paris Summons"), attached (with translation) to Swire Decl. as

3

Exhibit C, at 4-5. Le Monde promptly asked both Televisa and the Buñuels, as well as FSF, to provide proof of ownership. Id. at 4-5. While FSF immediately provided relevant documentation, Televisa did not do so until early March. Id. at 5. The Buñuels never directly responded, but instead, on March 4, 2005, applied in Paris for an emergency court order enjoining Le Monde from offering Los Olvidados. See French Summary Order at 2. The French court held a hearing on March 8, 2005, and the next day it denied the Buñuels' motion on the ground that the Buñuels, as purported co-successors in interest to a co-author of the movie, could not bring their claim without joining the other co-author. Id. at 3.

Le Monde went forward with its promotion on March 13 and 14, 2005, packaging the DVDs with the corresponding edition of its magazine Le Monde Radio-Télévision, which is sold primarily in France but also at several locations in New York. Id. ¶¶ 23-25. On April 5, 2005, Le Monde filed an interpleader action in France, naming FSF, the Buñuels, and Televisa as defendants and asking for a determination of which of the three actually owned the rights to Los Olvidados. See Paris Summons. Later that same day, Televisa filed this action, alleging that the defendants had infringed on its copyrights under United States, Mexican and French law.

On June 22, 2005, Le Monde moved to dismiss the claims against it for failure to state a claim and for forum non conveniens. Meanwhile, FSF moved to dismiss for lack of personal jurisdiction (a motion it has since abandoned), failure to join indispensable parties (the Buñuels), forum non conveniens, and the pendency of a related

4

proceeding. After argument on July 14, 2005, the Court granted Le Monde's motion to dismiss for failure to state a claim, but gave plaintiff leave to refile an amended complaint, see Order, 7/14/05, which plaintiff did. At further argument on August 5, 2005, the Court ruled that the amended complaint stated a claim against Le Monde for violation of United States copyright law but not for violation of Mexican copyright law, and accordingly dismissed Le Monde from Count 3, without prejudice to plaintiff repleading this claim if it should discover facts that would give it a good faith basis to do so. See Transcript, 8/5/05. Upon oral argument of the remaining motions, the moving parties indicated that they also sought, as alternative relief, to stay the case pending resolution of the French action. See id.

The Court agrees that the most sensible course at this point is to stay this action pending resolution of the ongoing interpleader action in France, which is likely to resolve the primary issue in this case, i.e., who owns the rights to the movies in question. In determining whether to so defer, courts consider factors such as the similarity of parties and issues, the adequacy of the alternative forum, the convenience of the parties and of witnesses, the promotion of judicial efficiency, the possibility of prejudice, and the temporal sequence of filing. See, e.g., MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp., 46 F. Supp. 2d 249, 251 (S.D.N.Y. 1999). The last consideration is unimportant here, since this case and the French one were filed nearly simultaneously, and both are in their infancies.

5

While this action has been pled as a copyright case, the issue of whether any party infringed plaintiff's copyrights is necessarily subordinate to the essential dispute in this case, which is the ownership of the movie rights.  This is the same issue and involves the same interested parties as in the French action, and there is no reason to doubt that the French forum is adequate to the task.[1]  The significant parties, evidence, and witnesses are largely located in France and Mexico; New York has no connection to the primary issue in this case, and neither does American law.

It appears that the French action has assembled all three of the primary interested parties,[2] whereas this action suffers from the absence of the Buñuels.  Adjudicating the ownership issue without them may prejudice their rights or those of others in this case, whether or not they are indispensable parties, see Fed. R. Civ. P. 19; see also Wales Industrial, Inc. v. Hasbro Bradley, Inc., 612 F. Supp. 510, 517 (S.D.N.Y. 1985) (Weinfeld, J.) (stating that, where the validity of a copyright is challenged, all persons having an

---

[1]Televisa's argument that a party moving for dismissal must come forward with evidence as to the foreign court's adequacy would carry more force if the alternative forum were part of a less established judicial system.  See, e.g., MLC (Bermuda), 46 F. Supp. 2d at 253 (finding competence of British courts to adjudicate commercial disputes to be "beyond question").

[2]Televisa asserts that it will move to be dismissed from the French action for lack of jurisdiction there.  Should Televisa make and win this still-hypothetical motion, the parties should so inform the Court, which will then revisit the issue of whether to continue the stay.

interest in the intellectual property should be joined).[3] Moreover, due to the absence of the Buñuels from the instant action, the French litigation necessarily will continue regardless of what this Court does, creating the potential for judicial inefficiency and inconsistent verdicts should this case go forward. Although Koch Lorber and Film Forum are not parties to the French action, they are irrelevant to the underlying issue of ownership that the French court will determine, since these New York-based defendants do not claim ownership of the movies and their liability, if any exists, turns entirely on whether FSF validly acquired ownership.

Despite these considerations favoring the French forum, this case might be permitted to continue at this time had it been brought by a domestic plaintiff that would find litigation considerably more convenient here. But plaintiff is a Mexican corporation, and virtually the only reason it has given for preferring this forum is that a flight from Mexico to New York is somewhat shorter than a flight from Mexico to Paris. While there is ordinarily a "strong presumption in favor of the plaintiff's choice of forum," a foreign plaintiff's choice of forum "deserves less deference," Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981), particularly where the

---

[3]Plaintiff argues that this Court may be able to acquire jurisdiction over the Buñuels. However, having failed to comply with its obligation to explain in its pleadings why it did not join parties who, on the face of the pleadings, have an obvious interest in this matter, see Fed. R. Civ. P. 19(c), plaintiff must suffer an adverse inference on this score. See, e.g., Stevens v. Loomis, 334 F.2d 775, 778 (1st Cir. 1964). Accordingly, the Court assumes for purposes of this motion that it has no jurisdiction over the Buñuels.

7

forum has little connection to the events underlying the dispute, Eskofot A/S v. E.I. DuPont de Nemours & Co., 872 F. Supp. 81, 96 (S.D.N.Y. 1995). Where, as here, the alternative forum has considerably more connection to the dispute, would be more convenient for other parties and witnesses, and may have a superior ability to adjudicate the key issues, a foreign plaintiff must point to more than a shorter plane ride to justify not deferring to a foreign forum that has much greater connection to the primary issue of ownership.

At the same time, deferral to the French forum warrants, on balance, a stay of this litigation rather than its dismissal. When the French action concludes, there may well remain questions that require litigation here, including whether any United States copyrights have been infringed and, if so, what remedies are available. See Murray v. BBC, 81 F.3d 287, 293 (2d Cir. 1996) (approving similar stay while the "truly disputed issues" were resolved in England). In addition, should there come to light any reason why the French forum cannot adequately adjudicate the primary issue or if the French resolution is inordinately delayed, it may be appropriate to move forward at this end.

Accordingly, subject to the above qualifications, this case is hereby stayed pending resolution of the French litigation or pending further order of this Court. For administrative convenience, all pending motions not previously resolved from the bench or by prior order are deemed denied without prejudice to being renewed (if not otherwise moot) when the stay is lifted. The Clerk of the Court is directed to place this case on the Court's Suspense Calendar.

8

Finally, the parties are hereby directed to send to Chambers every six months, beginning February 22, 2006, a joint letter detailing the status of the French litigation.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
August 22, 2005